# STOCK PURCHASE AGREEMENT

THIS STOCK PURCHASE AGREEMENT is made this 31st day of October, 2003, by and between Edward MacDonald, of Johnston, Rhode Island ("MacDonald"), Thomas Johnston, of Newport, Rhode Island ("Johnston") (Johnston and MacDonald may from time to time hereinafter be referred to individually as "Seller" or collectively as "Sellers"), and Oliver Holding Corporation, a Rhode Island corporation (the "Purchaser").

## WITNESSETH:

WHEREAS, each Seller is the owner fifty (50) of the one hundred (100) shares of outstanding no par value common stock of EMAC Warehouse Services, Inc., a Rhode Island corporation having a principal place of business at 180 Frenchtown Road, North Kingstown, Rhode Island 02852 (said corporation shall hereinafter be referred to as the "Corporation"); and

WHEREAS, each Seller desires to sell fifty (50) shares of stock in the Corporation to the Purchaser, and the Purchaser desire to purchase fifty (50) shares of stock in the Corporation from each Seller (said one hundred (100) shares shall hereinafter be referred to as the "Shares") and

NOW, THEREFORE, in consideration of the premises and mutual covenants herein provided, and other consideration, the receipt of which is hereby acknowledged, the Seller and Purchaser agree as follows:

1. **<u>Purchase and Sale of Shares</u>**. Subject to the terms and conditions herein set forth, Sellers agree to sell the Shares to the Purchaser, and the Purchaser agrees to purchase the Shares from Seller on the Closing Date (as hereinafter defined).

2. **<u>Purchase Price</u>.** In exchange for the Shares, Purchaser shall pay to each Seller the amount of Six Hundred Fifty Thousand and No/100 ($650,000.00) Dollars (the "Purchase Price") in accordance with Paragraph 3 hereof.

3. **<u>Payment of the Purchase Price</u>.** The Purchase Price shall be payable as follows:

(a) Three Hundred Fifty Thousand and No/100 ($350,000.00) Dollars shall be paid at the Closing Date to each Seller, in cash, by certified check, or by wire-transfer of immediately-available funds.

(b) Three Hundred Thousand and No/100 ($300,000.00) Dollars shall be payable at the Closing Date to each Seller, representing the balance of the Purchase Price, payable by delivery of a promissory note in substantially the form attached hereto as <u>Exhibit 3(b)</u> (the "Stock Purchase Notes") to each Seller.

(c) In addition to the Purchase Price, the Corporation's accountant, Ronald J. Amirault, CPA, shall, within thirty (30) days of the Closing Date, determine the balance of the

Corporation's cash, accounts receivable, deposits and prepaid expenses (the "Current Assets") and the Corporation's accounts payable and liabilities (exclusive of any lease payments for unexpired periods remaining on such leases) (the "Liabilities"), all as of the Closing Date. On December 15, 2003, Mr. Amirault shall present such calculations to Purchaser and Sellers, and Purchaser shall thereupon pay to Sellers in equal shares the amount of the excess of the Current Assets over the Liabilities; such amount shall be paid in cash, by certified check, or by wire-transfer of immediately-available funds. Mr. Amirault's fee related hereto shall also thereupon be paid by the Corporation.

**4. Delivery of Shares.** On the Closing Date, each Seller shall deliver to Purchaser a certificate representing fifty (50) shares in the Corporation, duly endorsed for transfer to Purchaser.

**5. Closing Date.** The closing of the transaction contemplated herein shall take place at the office of Daniel P. Carter, 960 Boston Neck Road, Narragansett, RI 02882, at 2:00 p.m. on October 31, 2003, or on such other date or at such other time as may be mutually acceptable to the parties (the "Closing" or "Closing Date").

**6. Representations, Warranties, and Covenants of Seller.** The Sellers represent, warrant and covenant as follows:

6.1 Sellers own and hold the Shares and warrant, represent, and certify that they have full and marketable title to the Shares to be delivered and there exists no impediment to the

sale and transfer of the Shares to the Purchaser. All documentation necessary to accomplish the aforesaid shall be reasonably satisfactory to counsel to Purchaser and Seller so that on delivery to the Purchaser of the certificates, the Shares will be free and clear of all liens, charges, security interests, and encumbrances whatsoever, except that the Shares shall be thereafter pledged by the Purchaser in accordance with that certain Pledge Agreement executed and delivered by the Purchaser contemporaneous herewith.

6.2 The Corporation is a corporation duly incorporated, validly existing, and in good standing under the laws of the State of Rhode Island and has corporate power and authority to own its properties and assets and to carry on its business as now being conducted.

6.3 The Corporation's authorized shares consist of five hundred (500) shares of common stock, no par value, of which one hundred (100) shares are issued and outstanding and held by the Sellers. All such shares have been validly issued and are fully paid and nonassessable.

6.4 Sellers have no knowledge of any options, warrants, or other agreement with respect to any shares of capital stock of the Corporation.

6.5 To the best of Sellers' knowledge, the Corporation is not subject to any litigation, administrative proceeding, or governmental investigation which would affect the consummation of the transaction contemplated herein.

6.6 The Corporation and Sellers properly elected to have the Corporation treated as an S corporation for Federal and Rhode Island income tax purposes as of the organization of the Corporation and shall maintain such tax status through the Closing Date.

6.7 Attached hereto as Exhibit 6.7 are copies of (i) the Corporation's financial statements as of September 30, 2003 which are true and correct and (ii) the Corporation's federal income tax return for calendar year 2002 which is true and correct.

6.8 Attached hereto as Exhibit 6.8 are exclusive lists of the Corporation's cash account balances, accounts receivable, deposits, prepaid expenses, accounts payable and liabilities as of the Closing Date, all of which shall be verified by the Corporation's accountant within thirty (30) days of the Closing Date pursuant to Section 3(c) hereof.

6.9 Attached hereto as Exhibit 6.9 are copies of all leases and material contracts to which the Corporation is a party.

6.10 The Corporation is a corporation duly organized, validly existing and in good standing under the laws of the State of Rhode Island, and has all necessary corporate power and authority to own, lease and operate its properties and to carry on its business as it is now being conducted.

6.11 Except as set forth in Exhibit 6.11 hereof, the Corporation owns and has

good, valid and marketable title to all of its assets, free and clear of any and all liens, and encumbrances.

6.12 The condition of the Corporation's leased premises in North Kingstown, Rhode Island is the same condition that such premises were in at the time of delivery of the premises to the Corporation, normal wear and tear excepted.

6.13 The consummation of the transaction contemplated by this Agreement will not constitute an event of default under that certain lease dated November 29, 2000 by and between the Corporation and Brown & Sharpe Manufacturing Company.

**7. Representations, Warranties, and Covenants of Purchaser.** The Purchaser represents, warrants and covenants as follows:

7.1 The Purchaser shall cause the Corporation to execute and deliver to the Sellers a guarantee of the Purchaser's obligations under the Stock Purchase Note (the "Corporate Guaranty").

7.2 The Purchaser shall cause the Corporation to execute and deliver to the Seller a first security interest in all assets of the Corporation to be evidenced by a Security Agreement ("Security Agreement") containing terms and conditions mutually acceptable to the parties including, without limitation, a provision whereby the Corporation shall be in default under the Security Agreement and, therefore, the Stock Purchase Note shall immediately become due and

payable, if Purchaser shall sell, assign or otherwise transfer all or any portion of his interest in the Corporation without the prior written consent of Sellers, which consent shall not be unreasonably withheld.

**8. Tax Matters.**

8.1 Sellers and Purchaser agree to elect to have the subject stock sale treated as an asset sale for Federal and Rhode Island income tax purposes pursuant to IRC §338(h)(10). For purposes of allocating the consideration for the Corporation's assets pursuant to such election, the parties hereto agree that the fair market value of the Corporation's assets other than its goodwill is exactly equal to such assets' adjusted tax basis as of the Closing Date (on an item by item basis), and any residual amount shall be allocated to the bargain lease up to a maximum amount of $325,000 with any excess amount allocated to goodwill.

8.2 Sellers and Purchaser elect to close the Corporation's books as of the Closing Date pursuant to Section 1377(a)(2) hereof, if necessary, to properly allocate the Corporation's tax activity up through and including the Closing Date (including the effect of the election provided for in Section 8.1 hereof) to Sellers and the Corporation's tax activity thereafter to Purchaser.

9. **Access by Sellers and Purchaser to the Company's Records.** Until the Closing Date, the Seller shall cause the Corporation and its officers and employees to afford the Purchaser and its representatives free and full access during normal business hours to all books and records of the

Corporation and will furnish to the Purchaser all pertinent information requested by the Purchaser with respect to the business and properties of the Corporation. The Purchaser agrees that all information relating to the Corporation heretofore supplied to the Purchaser or obtained pursuant to this Section shall be treated as confidential, and in the event that the transactions contemplated by this Agreement shall not be consummated, all such information received by the Purchaser shall not at any time or in any manner be utilized by the Purchaser for its advantage or disclosed by the Purchaser to others to the detriment of the Corporation. From and after the closing date, Seller's shall be allowed access to the Corporation's books and records relating to periods up through and including the Closing Date in order to defend any matters which may expose either Seller to any form of personal liability, including without limitation any tax audit of the Corporation including any period prior to the Closing Date.

**10. Conditions Applicable to the Purchaser.** The obligations of the Purchaser to purchase the Shares of the Corporation hereunder on the Closing Date are subject to the following conditions:

10.1 All warranties and representations made to the Purchaser herein by the Sellers shall be true and correct in all material respects on and as of the Closing Date with the same effect as if such warranties and representations had been made on and as of the Closing Date.

10.2 The Sellers shall have performed and complied with all agreements, covenants, and conditions on their part required to be performed or complied with hereunder on or

prior to the Closing Date.

10.3 Seller shall deliver to the Purchaser copies of (i) the Corporation's Bylaws and (ii) the Corporation's Articles of Incorporation certified by the Rhode Island Secretary of State.

10.4 The Corporation shall agree to waive any and all preemptive rights it may have with respect to the Shares.

10.5 Sellers shall have delivered to Buyer a letter of good standing for the Corporation issued by the Rhode Island Division of Taxation.

10.6 Corporation and Thomas Johnston shall have entered into a Consulting Agreement in the form attached hereto as Exhibit 10.6.

10.7 Purchaser shall have received from Corporation's Landlord written acknowledgement that the premises leased by the Corporation are in the same condition as when delivered to the Corporation, normal wear and tear excepted.

10.8 Corporation and Thomas Johnston shall have entered into a Non-Compete Agreement in the form attached hereto as Exhibit 10.8.

**11. Conditions Applicable to the Sellers.** The obligations of Sellers to deliver the Shares

of the Corporation hereunder on the Closing Date are subject to the following conditions:

11.1 All warranties and representations by the Purchaser to the Seller herein shall be true and correct in all material respects on and as of the Closing Date with the same effect as if such warranties and representations had been made on and as of the Closing Date.

11.2 The Purchaser shall have performed and complied with all covenants and conditions on their part required to be performed or complied with hereunder on or prior to the Closing Date.

11.3 The Purchaser shall have delivered to Seller the Purchase Price.

11.4 Corporation and Thomas Johnston shall have entered into a Consulting Agreement in the form attached hereto as Exhibit 10.6.

11.5 Sellers shall have received a written release from the Corporation's landlord for he premises in favor of EMAC Transport Co., Inc., a corporation wholly owned by MacDonald.

**12. Further Assurances.** The parties hereto agree to take such steps and execute such other and further documents as may be necessary or appropriate to cause the terms and conditions contained herein to be carried into effect.

13. **Entire Agreement; Waivers.** This Agreement comprises the entire agreement among the parties hereto at the date hereof and supersedes all prior agreements and understandings among them. The Seller or the Purchaser may extend the time for or waive the performance of any of the obligations of the other, waive any inaccuracies in the representations or warranties by the other, or waive compliance by the other with any of the covenants or conditions contained in this Agreement but only by an instrument in writing signed by the party or parties granting such extension or waiver.

14. **Notices**. Any notice to any party hereto pursuant to this Agreement shall be given by certified or registered first class mail addressed as follows:

| | |
|---|---|
| If to the Sellers: | Thomas Johnston<br>700 Bellevue Avenue<br>Newport, RI 02840 |
| | Edward MacDonald<br>9 Crystal Court<br>Johnston, RI 02919 |
| With a Copy to: | Richard Bogue, Esq.<br>Plourde, Bogue, McLaughlin & Moylan, LLP<br>50 Exchange Terrace<br>Suite 320<br>Providence, RI 02903 |
| If to Purchaser: | PO Box 728<br>13 Monte Bay Road<br>St. John USVI 00831 |
| With a Copy to: | Daniel P. Carter, Esq. |

222 Jefferson Boulevard
Warwick, RI 02888

15. **Governing Law and Forum**. This Agreement and all documents to be executed and delivered pursuant thereto shall be construed in accordance with the laws of the State of Rhode Island, and any disputes arising out of this Agreement shall be resolved by courts located in the State of Rhode Island.

16. **Successors and Assigns**. This Agreement shall inure to the benefit of and be binding upon and enforceable against the respective successors and assigns at the parties hereof.

17. **Indemnification of the Parties**. The parties hereto shall, for a period equal to two (2) years following the Closing Date, each indemnify and hold harmless the other from and against any and all liabilities, loss, cost of damage (including reasonable attorney's and accountant's fees necessarily incurred in defending or prosecuting any claim for any such liability, loss, cost, or damage but after deducting the amount of any resulting tax benefit on account of payment thereof) resulting from or by virtue of a breach of any covenant or warranty or the materials inaccuracy of any representation contained herein, including without limitation any claim of Brown & Sharpe Manufacturing Company, it successors and assigns with respect to the subject matter of Section 6.13 hereof.

18. **Nature and Survival of Undertakings**. Notwithstanding anything to the contrary contained in this Agreement, the Seller and the Purchaser agree that this Agreement constitutes the

entire agreement between the parties and that the representations, warranties, covenants, and understandings provided for herein shall survive the Closing and remain in full force and effect for a period equal to two (2) years following the Closing Date.

19. **<u>Brokerage Commission</u>.** Except for a brokerage commission due to Michael Ferrucci, Investors Capital and Robert Indeglia, which shall be paid by Sellers, no commission, finder's fee or similar charge is due in connection with the transactions contemplated herein

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the day and year first written above.

WITNESS:

Edward MacDonald, Seller

Thomas Johnston, Seller

Oliver Holding Corporation
Purchaser

By: [signature], Pres
Byron D. Oliver
Its President